The Saint Louis, Arkansas & Texas Railway Company in
Texas v. W. J. Turner.

No. 54.

1. **Practice—Special Exceptions.**—Where a petition is good on general demurrer, specific objections set forth in a bill of exceptions can not, on appeal, be made to answer the purpose of special exceptions not urged to the petition below.

2. **Pleading and Proof — Variance in Name.** — A petition against "The St. Louis, Arkansas & Texas Railway Company in Texas" alleged the transfer to plaintiff of certain claims for damages against the defendant, and the proof offered was of certain written transfers of such claims against "The St. Louis, Arkansas & Texas Railway Company." *Held*, that the variance could not have misled; and also, that as the transfers were not declared on in the petition, the variance could be supplied by parol evidence.

3. **Practice—Erroneous Evidence not Cause for Reversal, when.** In a trial before the court, the admission of improper evidence will not require

a reversal where it clearly appears from the findings that it did not influence the judgment; or, being immaterial or irrelevant, could not reasonably have done so.

4. **Pleadings—Allegations and Proof.**—In a suit for damages resulting from delay in the shipment of cattle, the petition alleged that the delay was caused by the negligence of the defendant railway company; and this was held sufficient to admit evidence that the defendant's track was in bad condition at the place where the delay occurred.

5. **Same—Notice of Claim for Damages.**—Where a written contract of shipment required notice of a claim for damages to be given at the place of destination, defendant was properly allowed to show by verbal testimony that defendant's line of railway ended at an intermediate point, and that from there to the point of destination the cattle were carried by a connecting line.

6. **Evidence—Written Admission not Conclusive.**—Written statements of the good condition of the cattle, given to the railway company by the shipper's agents in charge of them during the transit, while adding to his burden of proving their bad condition, may yet be contradicted by him by showing that they are not true.

7. **Same — Admission as Estoppel. —** A claim that such written statements estop the shipper by reason of their causing the railway company to forego making an examination into the condition of the cattle at the point of destination, is not good where there is nothing in the evidence to sustain the assumption that the statements had such effect.

8. **Notice of Claim for Damages—Burden of Proving Reasonableness.**—Where a cattle shipping contract requires notice to be given of a claim for damages within a very limited time, the burden of showing by pleading and evidence that such stipulation is reasonable under the fact of the particular case, is upon the railway company.

9. **Judgment for Damages not Excessive, when.**—Where the amount of damages allowed by the court does not reach the full limit justified by the opinions of some of the expert witnesses, the appellate court will not disturb the finding of the lower court on the ground that the judgment is excessive.

10. **Remitter of Damages.**—See the opinion for case in which a remitter of part of the damages allowed on a shipment of cattle was entered in the appellate court and the judgment reformed and affirmed accordingly.

APPEAL from Hill.    Tried below before Hon. J. M. HALL.

*Clark, Dyer & Bolinger* and *T. H. Dixon*, for appellant.—1.  Plaintiff's petition contains no sufficient allegations to justify the admission of evidence in support of the matters complained of, and fails to specify the market value of the cattle when they were delivered, or when, under the averments, they should have been delivered.    2 Am. and Eng. Encyc. of Law, 850, note 4.

2.  The court erred in admitting in evidence the purported contract of assignment to plaintiff of damages alleged to have been sustained by the several shippers whose names appear thereto.    There was no averment in the petition that the defendant company was the company referred to in the instrument offered.    Mims v. Mitchell, 1 Texas, 443; Denison v.

League, 16 Texas, 407; Brown v. Martin, 19 Texas, 343; Stewart v. Gordon, 65 Texas, 344; Sayles' Civ. Stats., 400, note 7.

3. The court erred in permitting E. Roberts, a witness for plaintiff, to testify about the condition of defendant's track at any point on its line. As there was no allegation whatever in plaintiff's petition or pleading as to the condition of defendant's track at the time of the shipment of the cattle referred to, there was no foundation in the pleadings for said evidence. Guess v. Lubbock, 5 Texas, 535; Gillies v. Wofford, 26 Texas, 76; Lemmon v. Hanley, 28 Texas, 219; Wheeler v. Wheeler, 65 Texas, 573.

4. The witness A. Roberts, through whom the plaintiff partly claims, and also E. Roberts, having signed written statements as to the condition of the cattle, duly certified, and delivered the same to defendant after the alleged injury, should not be permitted, over objection of defendant, to explain away and vary by parol testimony the contents of said statements when there is no ambiguity in same. Hunt v. White, 24 Texas, 643; Lanx v. Glass, 1 Ct. App. C. C., sec. 1180.

5. The evidence does not sustain the finding of the court as to the amount of the damages allowed. Zapp v. Michaelis, 58 Texas, 270; Newcomb v. Babb, 2 Ct. App. C. C., sec. 761.

6. The judgment is contrary to and not supported by the evidence, because the written statements certifying that the cattle, at various points in transit, were in good condition, had the effect with defendant at the destination of said cattle shipment to cause the defendant company to forego examination of the condition of said cattle, and was in effect a notice in writing that the stock shipped had been shipped in good condition. Pome. Eq. Jur., sec. 805, et seq.; Edwards v. Dickson, 66 Texas, 613; Railway v. Gorman, 2 Ct. App. C. C., sec. 777.

*McKinnon & Carlton,* for appellee.—1. Under a general averment of damages all the injuries arising directly from the acts complained of can be proved. Railway v. Durrett, 57 Texas, 53; So Relle v. Tel. Co., 55 Texas, 311.

2. The contract of assignment of the claims was not offered in evidence as a contract giving rise to the cause of action. The cause of action was damages on account of injuries done to the property of various parties, and the contract was an assignment to one by the others of their claims for damages; therefore the rule that there must be no variance between allegata and probata does not apply. Again, a variance, to be fatal, must be such as to surprise or mislead the opposite party. Eakin v. Ins. Co., 1 Ct. App. C. C., sec. 1234; Pleasants v. Dunkin, 47 Texas, 343; Mason v. McLaughlin, 16 Texas, 24; Mason v. Kleberg, 4 Texas, 85; Wiebusch v. Taylor, 64 Texas, 53; Shipman v. Fulcrod, 42 Texas, 248.

3. Either written or parol evidence or both were admissible to show that the various parties had assigned to appellee their claims for damages

against appellant.    Railway v. Freeman, 57 Texas, 156;  Stewart v. Railway, 62 Texas, 246.

4.  Where a case is tried before the court, the admission of incompetent or immaterial testimony is not ground for reversal if there be sufficient competent testimony to support the judgment.    Schleicher v. Markward, 61 Texas, 102;  Clayton v. McKinnon, 54 Texas, 206;  Rev. Stats., art. 284.

5.  There is no rule of law which forbids a party from explaining or contradicting an ex parte statement or nondispositive writing made by him, especially when the statement is procured by fraud and misrepresentation.    McAdoo v. Lummis, 43 Texas, 227;  Glenn v. Mathews, 44 Texas, 400;  Peak v. Blythe, 1 Ct. App. C. C., 8;  1 Greenl. Ev., 305.

HEAD, ASSOCIATE JUSTICE.—On June 9, 1888, appellant received for shipment by the same train at Brandon, in Hill County, Texas, to be carried to East St. Louis, in the State of Illinois, 46 head of cattle for one A. Roberts, 70 head of cattle for E. Roberts, 63 head of cattle for Sloan & Roberts, 48 head of cattle for D. B. Sloan, 26 head of cattle for Dyer Bros., 22 head of cattle for W. J. Turner; and at Kerens, in Navarro County, Texas, it received from J. J. Goodnight 49 head of cattle, to be carried, by the same train as those above named, from said place to East St. Louis, in the State of Illinois.

At the time of receiving said cattle as aforesaid, each of said parties, with the agent of appellant, executed a separate written contract, in each of which it was stipulated that said parties agreed, that " as a condition precedent to his right to any damages for any loss or injury to his stock during the transportation thereof or previous to loading thereof for shipment, he would give notice in writing, verified by affidavit, of his claim therefor to some general officer of said first party, or to its nearest station agent, before said stock is removed from the point of shipment or from the place of destination, and before said stock are mingled with other stock, within one day after the delivery of such stock at its point of destination, and before the same shall have been removed, etc., to the end that such claim may be fully and fairly investigated; and that a failure to fully comply with the terms of this clause shall be a complete bar to any recovery of any and all such claims."

In reaching East St. Louis, the point of destination, it was necessary for said cattle to pass over the line of a connecting carrier from Cairo, Illinois, which was the terminus of appellant's line, and at East St. Louis appellant had no general officer or station agent within the meaning of the contract aforesaid, but from one to two miles distant therefrom, at St. Louis, in the State of Missouri, it did have its general offices and general officers within the meaning of said contract, but the evidence does not show which, if any, of these was present at the office of appel-

lant during the day on which the notice called for in the contract was re-
quired to be given.

The first feeding station after loading the cattle would have been at
Texarkana, in the State of Texas; but the cattle having arrived there on
time, and not having been in the cars longer than 23 or 24 hours, on the
suggestion of the conductor of appellant that they would be able to reach
Pine Bluff, the next feeding station, on time, appellee agreed that the
cattle need not be unloaded until they reached this last named station.
Between Texarkana and Pine Bluff, however, one of appellant's trains
had been derailed, preventing the passage of the train containing these
cattle and causing their delay for about 8 or 9 hours, and thus kept the
cattle in the cars from 41 to 45 hours without unloading, feeding, or
watering. The evidence shows that after cattle have been kept in cars
as much as 28 hours they damage very rapidly, causing them to become
feverish, so that when they reach food and water they take too much,
and that the damage thus caused is not remedied by subsequent good
treatment on the journey.

The damage found by the court below to have been caused by the un-
usual delay above set forth was estimated at $1555 upon all of the cattle,
including those of Goodnight. The court also found that this damage
was caused by negligence on the part of appellant; and also that the
contract requiring notice to be given by appellees was not reasonable
under the circumstances of this case. No notice as called for in the con-
tract was, in fact, given of this damage. Appellee, on July 23, 1888,
filed this suit to recover the damage so caused to all of the cattle above
named, alleging transfers from the other owners to him of their claims
for such damage, and on the trial he proved such transfers from all the
parties except Goodnight, but proved no transfer from him. In his
petition he alleged the damage to be $5 per head, and on the trial re-
covered judgment for $1555, as above stated.

Appellee tenders in this court a remittitur of $245, being $5 per head
on the 49 head of Goodnight cattle, together with interest thereon at 8
per cent per annum from the date of the judgment, and asks that the
judgment rendered below as to the remainder of such damage be
affirmed.

Appellant's first assignment of error complains of the action of the
court below in overruling its general demurrer to appellee's petition.
Appellant's objection to the petition, as we gather from the propositions
made under this assignment, is, that it is not sufficiently specific in stat-
ing the damage to the cattle and the difference in their market value
caused by the treatment complained of therein. We are of opinion that
the petition was sufficient, on general demurrer at least, and that appel-

lant's specific objections, as set forth in its bill of exceptions, can not be made to answer the purpose of special exceptions.

Appellant's second, third, and fourth assignments of error complain of the action of the court below in permitting appellee to introduce in evidence the written transfer from the other shippers to him of their claim against appellant for the damages caused to them, and in permitting appellee by verbal evidence to identify the claims referred to in this transfer with the ones sued on by him. The ground of the objection to this transfer was, that the appellant's name is given in appellee's petition as " The St. Louis, Arkansas & Texas Railway Company *in Texas*," and the transfer from these several parties was of their claims for damages against " The St. Louis, Arkansas & Texas Railway Company;" appellant claiming that this constituted a fatal variance which could not be supplied by verbal evidence. Appellee in his petition did not declare upon this written transfer, but only alleged in general terms that these several parties, for a valuable consideration, had transferred their claims to him, and the instrument complained of was offered to prove this allegation; and under the allegations in plaintiff's petition we think he was correctly allowed to introduce any evidence that would show that he was the owner of these several claims for damage against appellant, and that this evidence could either have been wholly written, wholly verbal, or partly written and partly verbal; and we do not think the objection comes within the reason of those cases relating to variances between a written instrument declared on in the pleading and the one offered in evidence. But even if these decisions should apply, we are not prepared to hold that the variance in this case could have misled appellant, and therefore be held material. Mason v. McLaughlin, 16 Texas, 24.

Appellant's fifth and seventh assignments of error complain of the action of the court in permitting appellee to introduce evidence of a slight delay to the train containing the cattle between Brandon and Corsicana, Texas, the delay complained of being alleged in the petition to have occurred between Kerens, Texas, and Pine Bluff, Arkansas, both points being east of Corsicana. Where the trial is before the court without a jury the admission of improper evidence is not ordinarily sufficient to require a reversal. Schleicher v. Markward, 61 Texas, 99; Andrews v. Key, 77 Texas, 35. In this case the court in its findings expressly states that this delay was not taken into consideration, and of course, under these circumstances, the admission of this evidence, even though error, would be no ground for reversal.

Appellant's sixth assignment of error complains of the action of the court in permitting the witness E. Roberts to testify that defendant's track at the place where the delay occurred was in bad condition, the ground of objection to this evidence being that there was no allegation of bad track in appellee's petition. There was, however, an allegation that the

delay to these cattle was caused by the negligence of appellant, and we think this evidence was admissible to show such negligence. At any rate it could only be classed as immaterial or irrelevant; and the trial being before the court without a jury, the admission of such evidence is not ground for reversal.   Andrews v. Key, cited above.

Appellant's eighth and ninth assignments of error complain of the action of the court in admitting verbal testimony to show that the terminus of appellant's line of railway was at Cairo, Illinois, and from there to East St. Louis, the point of destination, the cattle were carried by a connecting line.   This evidence was admitted as bearing upon the reasonableness of the written contract requiring appellees to give notice of their damage at the place of destination, and was admitted, in connection with other evidence, to show that appellant had no agent at the point of destination to whom the notice called for in the contract could be given.   For this purpose we think the evidence was admissible.   Appellant's objection to this evidence was, that there was no allegation in appellee's petition that appellant did not own and operate a through line to East St. Louis.   Appellee did allege that appellant had no station agent nor general officer at the point of destination to whom the notice could be given. The burden, however, was upon appellant to allege and prove the reasonableness of its contract as applied to the facts of this particular case, and this evidence was properly admitted to rebut the issue upon this question.

During the transit of the cattle between Pine Bluff and Cairo, A. Roberts and E. Roberts, who were with the cattle attending to them for the shippers, signed written statements at Jonesboro and Bird's Point to the effect that the cattle were then in good condition, and in its tenth and eleventh assignments of error appellant complains of the action of the court in permitting verbal evidence, especially from these witnesses, to supplant, contradict, and vary these written instruments.   That such instruments are not to be classed as conclusive admissions, or as constituting an estoppel, we think clear.   Mr. Wharton, in his work on the Law of Evidence, volume 2, section 1077, says:   " Supposing an admission is set up, not as the basis of a contract, but simply as the concession of a fact on which the opposite party relies to make his case, then the admission, as we have already seen, is not a *probatio*, but a *levamen probationis*; it does not *prove* a fact, in the strict sense, when offered against the declarant, but it relieves the party relying on it from proving such fact, thereby throwing the burden of disproving on the declarant.   By the scholastic jurists such admissions were spoken of sometimes as half-proofs, sometimes as presumptions.   With us, evidence that they were made may be admissible, either as yielding presumptions against the party charged, or as relieving (under ordinary circumstances) the party offering them from the necessity of more formal proof.   At the same time it must be remembered that they are not conclusive proof of what they

state; that they may be readily neutralized by proof that they were uttered in ignorance or levity or mistake; and hence that they are, at the best, to be regarded as only cumulative proof, which affords but a precarious support, and on which no party should be content to rest his case. * * * In fine, where the party seeking to prove admissions in no way altered his status in consequence of their utterance, the party making them can always prove their untruth, though not, it is said, by introducing subsequent inconsistent declarations.'' Also see Irvin v. Ellis, 76 Texas, 165.

Appellant's twelfth assignment complains that the judgment of the court is not supported by the evidence, first, because appellee and his assignors consented that the cattle need not be watered and fed at Texarkana, and are thereby estopped from claiming negligence on the part of the defendant for not feeding and watering them. We think this would be a correct statement of the law if the only delay was such as resulted in the extra time required to make the next feeding station, in the absence of negligence on the part of appellant, but it would have no application to an unusual delay caused by its negligence in not making the customary time.

Appellant in the same assignment complains that the amount of damage allowed by the court is excessive. While the amount to us seems large, yet several witnesses were permitted without objection to estimate the amount of damage caused to the cattle by the unusual delay at from $3 to $5 per head. The witness Smith was disinterested, and testified as an expert that the damage caused by this delay was at least $5 per head. Appellant had several experts upon the stand, and none of them were asked to estimate the amount of this damage. The amount allowed by the court did not reach the full limit justified by the opinions of some of the witnesses, and under the circumstances we would not be authorized to disturb the finding of the lower court when the remittitur is entered, as will hereafter be done.

In its twelfth assignment appellant also complains that the finding of the court below that the contract requiring notice was unreasonable and void can not be sustained by the evidence. As stated above, and as we have several times decided, in such cases the burden is upon the carrier, both by pleading and evidence, to establish the reasonableness of a contract of this kind as applied to the facts of the particular case. In this case it seems that the line of appellant's road terminated at Cairo, and it had no officer or agent at East St. Louis, the point of destination, but it did have such officer at St. Louis, in the State of Missouri. It is not shown, either by pleading or evidence, the name of any of these officers who were in St. Louis at the time this notice was required to be given by the contract. It appears that at the time this notice should have been given the shipper's agents in charge of the stock were not acquainted with

such officers and did not know where to find them; and to have found them it would have been necessary for such agents to have crossed the Mississippi River into an adjoining State, and to have assumed the responsibility of finding and deciding as to which one of these officers was a general officer within the meaning of the contract; and under the circumstances we are not prepared to say that the court erred in concluding that the contract was unreasonable in this case.    If the carrier desires to claim exemption from damages caused by it, by reason of the failure of the shipper to give notice in compliance with one of these contracts, it must furnish reasonable facilities for such notice to be given in compliance therewith; and we are not prepared to say that it would be reasonable to require a shipper to leave his stock and go to a station in another State in search of some one upon whom to serve such notice.

Appellant also in its twelfth assignment complains that the judgment of the court can not be sustained by the evidence, because it claims that the written statements certifying that the cattle at the different places in transit were in good condition, caused it to forego making an examination into the condition of same upon their arrival at their point of destination, and was in effect a notice in writing that the stock shipped had been shipped in good condition, but we find nothing in the evidence to sustain the assumption that these statements had any such effect.    We do not hold that an estoppel of this kind could not be successfully interposed if it were sustained by allegation and evidence, but we would not be authorized to assume, in the absence of evidence, that these statements had any such effect in this case.

As stated above, appellee has filed in this court a remittitur of $5 per head for each head of the Goodnight cattle, with interest on said amount from the date of the judgment.    As this is the amount of damage per head claimed in his petition, and as the court could not have allowed any greater sum than this as the damage to said cattle, we are of opinion that this remittitur should be allowed, and that the judgment below should be reformed to correspond therewith.    Railway v. Measles, 81 Texas, 474.

Upon the whole case, we are of opinion that the judgment rendered by the court below should be reformed by entering the remittitur as above indicated, and when so reformed it should be in all other respects affirmed, and it is so ordered. .

*Reformed and affirmed.*

Delivered December 20, 1892.

Chief Justice Tarlton did not sit in this case.